Next up will be the matter of United States v. Maurice Owens, case number 23-6397. You will hear first in this case from Appellants Counsel, which will be Mr. Anderson. And Mr. Anderson, you've reserved two minutes for rebuttal. When you're ready, you may begin. First is the court. Mr. 467, Owens' guilty plea, section 94, first offense, arson and indictment. Specifically connected to the count on drugs. The court failed to ensure that Owens stood in count 5 required for foreign admission as he carried a gun on December 10, 2020, specifically in the presence of a conspiracy involving himself and his co-defendants. Everything in this record, including everything that was submitted in connection with the co-defendants, confirms that the government didn't have evidence of a conspiracy existing before Owens called another drug dealer from jail days after he was arrested with a gun. And so there's at least a reasonable probability that apart from a district court's rule of non-inheritance here, Owens wouldn't have pled guilty to that crime. But doesn't the the indictment charges a conspiracy, a more general conspiracy, than the one you're talking about on December 12th? The indictment says that there was a conspiracy between and among these these three dealers to get one of the other ones to step in when one of them was not available. And on December 12th, that may have changed because Owens was in jail and therefore wanted them to take all his customers. But the allegations in the indictment and the proof both suggest that there was a conspiracy that started well before December 12th. The proof did not suggest that. There's not a single factual admission or allegation in this record to confirm that Owens had anything to do with either of these co-defendants before he began calling one of them from jail. There is just as much evidence in the record to suggest that Owens had never even spoken to these co-defendants before he was in jail. As there is to suggest, he knew these co-defendants. And simply because something happened on December 12th, the fact that this one drug dealer agreed to cover customers for him does not by itself mean that before that there was this pre-existing agreement, conspiracy, that they would do the thing. You know, if one drug dealer carries a gun on one day and then gets rid of it, two days later he sees another drug dealer on the corner and he sees the patrol car coming and he yells, police! The other drug dealer runs away. That by itself doesn't mean that two days before, when the defendant had a gun, there was some existing agreement, conspiracy, that they would alert each other about law enforcement presence. Can we separate for a minute the Rule 11 question, which is, you know, did he, was he aware that he was pleading to in furtherance of the count one conspiracy from the factual basis? And let me ask you a question about the the factual basis part. This will be painful for you, but assume for purposes of argument that there was undeniable proof that the conspiracy existed before the date he had the firearm, right? That he has the firearm on the 10th and he makes the phone call on the 12th, is that right? Okay, so assume that there's a recorded meeting of the three of them on the 7th, okay? Does, is that the, is that the only I understand that's different than the Rule 11 problem, but is that the argument? I want to make sure that I know exactly what the argument you're making is. Would that, would that be relevant to the question of whether it's reversible under plain harming, whether a client would have, could have rationally admitted his guilt to this, given the fact that the record does not actually should have any evidence to, that the government could have proved that in the trial. But if there agreed well before he had a gun, they would help cover each other's customers. So they're all doing this together. But that's the argument, it's a timing argument, that possessing the gun on the 10th could not have furthered count one because the conspiracy did not exist yet on the 10th. That is the argument. That is the argument. And then separately we have the Rule 11 problems about what he knowingly pled to and whether he was knowingly, whether he was properly advised. I know they're intertwined. All right. And on the, on the advice point, Judge Bilardo alluded to the fact that the indictment does say in count five that he possessed the firearm on December 10th in furtherance of a drug offense, namely the offense charged in count one. And I believe this, the yes. Why is that not sufficient to ensure that he understood it was in connection with count one? They often are. But just saying, you know, and I think it's also in the Blackwell case and in the way where the district court in those cases, just up here, never asked the defendant to describe his conduct in his own words. But we're not required to do that, right? At the plea, my understanding is that there's no requirement to be in your own words. Many times the, just the sentencing judge asks that or the plea judge asks that. It's not required, is it? No, it's not necessary. In all cases, it would be sufficient. It's one of the things that did not happen here. You know, the court never read the indictment to Owens, never relicited the charges. The best that happened was that the district court had its clerk read out loud the charges, but that was one of the titles of the charges. And they, that recitation helped to actually obscure the fact that this count five was connected to count one. The clerk said the defendant's possession of the handgun was in furtherance, I'm sorry, as a count five, use of carrying a firearm in relation to a drug trafficking crime. How do you plead? And that's clearly what Owens thought he was pleading guilty to. He had drugs on him. He was arrested with a gun. The government's offer of proof that they submitted in 11 days before the plea hearing appears to the defense, possession of the handgun was in furtherance of his conspiracy to distribute the handgun. But the conspiracy, just getting back to my question again, the conspiracy that was alleged was a conspiracy with these two other drug dealers and others, right? And we know that he's selling drugs on the second. We know he's selling drugs on the fourth. We know that he's caught with a gun on the 10th. So, so why isn't it the case that while the, the two gentlemen who he calls from jail might've joined this, this conspiracy later on, it had pre-existed the, the jail call? Well, as a preliminary matter, the indictment only charged the three defendants. It didn't say anything to others. And so the fact that Owens said, yes, there was a conspiracy that started in December, 2020, the only date in the indictment where there's a hedge, by the way, it's true because the conspiracy, all the facts that he alleged, all the facts that he admitted to, I'm sorry, and the facts that the government alleged in his and the codefendant's proceedings indicated it started with that first phone call on December 12th. There's no mention anywhere, including the codefendant Walker's proceedings regarding conduct attributable to him before, I think they say it was in the complaint, the week of the 13th. So the conspiracy that's alleged in the indictment involves only three people. Correct. And that's, I would say page 32 of the appendix. And I would like to very quickly address my second point so as not to waive it. At sentencing, the district court didn't make maximum findings sufficient to support the application of a full-level leadership enhancement. Substantially increased the guidelines range here. My client exceeded the bill of the sentence guidelines, uh, bill of the guidelines range sentence. In fact, nobody said anything about this enhancement in sentencing. And the PSR, the allegations in that don't indicate by requirements of the evidence that any of these three never before mentioned people who are describing paragraphs 19 through 20 qualified as legally responsible participants. It's the girl, the girlfriend and the two people she contacted? The two, he had a phone call with his girlfriend and then he had a phone call with one other person who, according to the PSR, he wanted to share sentences with her. The next sentence in the PSR indicates that a month after that call, he called his co-worker and said, I have in fact shared my customers between you and some other person named Marvin. So if that sentence by itself is sufficient to indicate that Marvin was a legally responsible participant, I would argue it's not. But even if it was, that's four participants. The one person he said I want you to share, the next sentence of the PSR indicates that he did not in fact share. All right. Thank you, counsel. We'll hear from the government. Mr. Sutcliffe. Good morning. May it please the court, Thomas Sutcliffe on behalf of the United States. Your honors, I apologize. My voice is a bit hoarse this morning, but I'll make every effort to speak up. If I may, I want to begin just by summarizing some of the key portions of the change of plea hearing that occurred in October of 2022. After the district court advised the defendant of his rights, the court clerk took the defendant's plea and placed him under oath. Shortly after that, the government recited the elements of each one of the three offenses to which the defendant was pleading. It then provided a factual proffer that was substantially identical to the proffer that it had included in the offer of proof that it had submitted 11 days before. In that proffer, it began by election that beginning in December of 2020, the defendant and his two co-defendants conspired to distribute fentanyl in the Syracuse, New York area. And the way that conspiracy worked, as the government explained, was that the three co-defendants were independently selling fentanyl with their own suppliers and their own sub-customers, but they were doing so pursuant to a mutual referral agreement. Now, the government's proffer does not state the exact date that this conspiracy began, but by necessity, it had to have started before the defendant's arrest went to the temple, because this conspiracy, as described, was predicated on the assumption that all three co-defendants were independently selling fentanyl and thus were in a position to assist one another, which the defendant would not have been able to do while in custody. What evidence is there in the record that there was any contact at all? Your friend says that there's no evidence in the record that there was any contact between his client and the other two co-defendants before December 12th. Is he right? Mayor, first I have to emphasize that this is the allegation we don't mistake. And I made it as a proffer that there was an understanding of a mutual agreement. That was an admission he made on the record for purposes of determining whether or not there's an actual basis. As this court has said before, it's not the district court's goal to weigh the government would be likely to secure a guilty verdict. They can take the defendant's admissions on their face. But I take it from your answer that he's right, that there is nothing in the record that suggests any contact between the other two gentlemen and Mr. Owens prior to December 12th. Your Honor, in terms of the evidence, I think it's accurate to say the government didn't have proof of the direct communication explicitly established in this conspiracy. How about indirect communication? The indirect, the live talk was just the sheer speed at which this conspiracy came together. And I know, Your Honor, it's even quicker than I think the record reveals. To go slightly off record, Your Honor, just to make a point, the speed at which he is contacting his girlfriend to identify who he's going to sign custody and jail bills occurs even before December 12th. In fact, it occurs as early as the day of his arrest. But that's not in the record? That's not in the record, Your Honor. But again, what is in the record is the fact that the government made a very explicit factual prompt regarding a conspiracy that by its nature had to have predated December 10th. And he made an unequivocal admission to that allegation. Well, it had to predate December 12th. Your theory is that the reason it had to pre-exist is it's only helpful to have a mutual referral service deal with someone who's not in custody. Or he goes into custody on the 10th. So it had to predate the moment he's taken into custody. Your Honor, the way the government described it was that the defendant and his co-conspirators, and Your Honor, I'm just going to refer to page 165, the defendant and his co-conspirators typically had separate sources of supply for heroin and fentanyl and separate customers. So right there, the government's making clear there is at least a portion of this conspiracy where the defendant has suppliers and customers who he's supplying. At that point, it's referring to a portion of the conspiracy where none of the co-defendants are presently unable to service their customers. That's the only way it makes sense. All right, let's talk about the next step. So let's assume, less painful for you than it may have been for defense counsel, that the conspiracy, that there's proof beyond a reasonable doubt that the conspiracy existed by December 1st. Assume that. How does Mr. Owens' possession of a firearm in connection with his individual personal transaction of drugs on December 10th further the aims of the conspiracy? I can understand how it furthers the aims of his transaction, his actual distribution or possession with intent to distribute. I'm having a hard time seeing how his possession of a firearm on that day furthers the conspiracy. Because, Your Honor, the firearm is protecting the integrity of his drug operation while he's in the conspiracy. By necessity, it's helping everybody else. Imagine for a moment that on December 10th, the defendant had been robbed or shot or hurt as a result of him participating in a drug conspiracy. If that had occurred, he wouldn't be very much held to the conspiracy anymore. He wouldn't be in the position where he had a viable drug business and thus would be in a position to help his other... So what if he carried that weapon during the course of a convenience store robbery that day instead? And under your theory, if he'd been injured, shot, arrested, and therefore taken off the streets and no more help to his alleged co-conspirators, that it hurts the conspiracy. So having the, to the extent that having the gun on him protects him rather than exposes him to danger, would that also have furthered the conspiracy? I don't think it would, Your Honor, but I think the protection that the gun has given him on December 10th is much more specific to the aims and goals of the conspiracy. So for example, if he'd been robbed at a supply that day or robbed at his drug proceeds, I think that would have knocked him out of the drug business in a much more direct or immediate way than it would have. So by rendering him unavailable as a fellow referral dealer to his two friends, that harms the conspiracy. And so the gun, the gun furthers the conspiracy in that, it's an, it's the indirect way, right? It's certainly indirect, Your Honor, but I think the conspiracy, at least at that initial phase, as the government described it, is primarily on the assumption that we have parallel sales operations. And to the extent the gun allowed him to continue to have that parallel sales operation, I think it was a mutual benefit of everybody in the conspiracy. With respect to the, the advocacy of informing him of the charge, the 11B1G issue, the district court did not commit plain error by determining here that the defendant understood the nature of the charge. First of all, it's very obvious that the government recited the elements of each of the offenses to which the defendant pled. There's elements very accurately stated, and that portion alone takes this outside of some of the cases to which the defendant cites, including, for example, the Lloyd case. When the Lloyd case found that there had been a Rule 11 violation, one of the things it stated, and I'm quoting it, is that, quote, the court did not articulate the elements of the crime to which Lloyd was pleading guilty. Ask the government to do so, or have Lloyd state, in his own words, the factual context underlying his convictions. So, Your Honor, right there, I think, Your Honor, that's what Lloyd identifies as missing is here. Here there was a recitation of the elements, and the government made that very explicit before providing the potential proffer. In addition to that, there's also the fact that the government, in its proffer, goes one step further and makes it explicit, and I'm quoting, Your Honor, for Your Honor's petition, 166, in describing the events of this sort of attempt, the government specifically alleged here that the possession of the firearm was in furtherance of the drug trafficking conspiracy. That is to say, the very same conspiracy that the government had outlined only a few minutes before its proffer was proffered, and the same conspiracy that was alleged in the California complaint. And then, in addition to all of that, the district court also had a direct, in-person colloquy with the defendant, during which it confirmed that the defendant had reviewed the indictment, that he had had the opportunity to ask questions of his attorney, and that he understood the nature of the charge. And, again, he did this without asking any questions, without any hesitation or implication. So, for those reasons, Your Honor, here, there was a violation of Rule 11. In addition, Your Honor, even if there had been a Rule 11 violation, the defendant has not established any harm to his substantial rights. That his principle claim on appeal appears to be that he didn't understand that Count 5 was predicated on the conspiracy alleged in Count 1. And even assuming that he actually was confused about that issue at the time of his plea, that confusion would have dissipated by the time of the sentencing. Because, at sentencing, his defense counsel confirmed that he had reviewed the PSR thoroughly with his mind, and the PSR in Paragraph 3 makes exactly that point explicit. It states that the Count 5 offense was predicated on Count 1. And yet, at no point, either during that sentencing, or at any point before, did the defendant ever move to withdraw his plea, or even hint that he was dissatisfied with that plea. So, as a result, Your Honor, this court should defer the defendant's conviction. Unless the court has any further questions, I'll move on to the press assembly. All right. Thank you, counsel. And, Mr. Anderson, you have two minutes for rebuttal. Can you start by addressing the prejudice argument that your friend just made? Thank you, Your Honor. First, the government had never told opponents during the plea hearing, or the district court had ever told them during the plea hearing, you know, this gun possession crime is specifically connected to Count 1, not just a drug trafficking crime. It's just what the district court's court said. Oh, let's plead guilty to that crime. Based on everything we have on the record, it would have been an irrational act. You would not have pled guilty knowing that it was specifically tied to that. Everything we see in this record, we looked at the whole record when we looked at this plain error prejudice review. You know, is there a substantial probability that the defendant was, like, guilty of some of the errors? And we don't even have to look at ourselves at the proceedings here, where that was never made clear to the defendant. We look at the detention hearing transcript, where, after the indictment was filed, the government described how Holmes was arrested on December 10th, quote, in an unrelated manner. They say, again, in co-defendant Walker's plea agreement, and in the government's proffer at Walker's plea hearing, they described how Walker, the co-defendant, wanted to be first called on December 12th, was brought on this conspiracy, quote, after Holmes was arrested on unrelated charges. When Walker's being sentenced, his counsel made the same argument, you know, my client, Walker, was only brought into this after co-defendant Holmes was arrested. The government didn't object to that, because it was fully consistent with government governance as before. And the written and oral factual proffers they submitted in connection with co-defendant Smith's guilty plea don't mention anything attributable to Smith before December 4th of 2021. But, but Owens reviews the PSR, agrees with it, and doesn't move to withdraw his plea before he's sentenced. So, so where's the prejudice? He looked at the PSR, he has nothing that the indictment itself didn't have. So simply asking defendant, did you read it, under this court's precedence, is not sufficient. Now, the government also cited things outside the record, which brings to mind the fact that we did file a motion that we support, only to ensure that your honors are aware of it, because I know from my experience here last week, things that are on the dockets aren't always presented to the panel. And we also filed a rule 28J letter in connection with our third final appeal. But what we still don't have is the government's position as to when, in December 2020, this conspiracy came into being. It was obviously, they believed it was before December 10th. But since they put in or about December 2020 in the indictment, the only date on which they had done the indictment, we have no idea when they actually think this came into being. So Owens possessed a firearm briefly, just after midnight on the morning of December 1st, 2020. That is in furtherance of the conspiracy, simply because the indictment itself, which is then the only thing in the PSR relevant to these charges, says, oh, this conspiracy was December 2020. So you should have known, you know, when you plead guilty to this, that that's what you were pleading guilty to all. Your possession of gun was necessarily in furtherance of anything that happened in or about December 2020. And finally, and I just want to note again, the government spoke about things that were said during the plea hearing both by the district clerk said during an evasion to age of trafficking, right? Governor Crawford said, possess the gun in furtherance of age of trafficking. Well, also says in furtherance of this conspiracy. And the written Crawford, written offer of proof, they submitted 11 days before that. You know, Owens had 11 days to look at this. They said in furtherance of this conspiracy. So the fact that in the middle of this five page, um, in the transcripts, description of what they would prove, the government said this conspiracy instead of this conspiracy. And then after all that, they just report by curse. And Owens is that right? And he said, yes. That when you consider everything else in this record, especially the lack of any indication, there was in fact a conspiracy before these phone calls started happening is what established that there was an error that Owens didn't know he was pleading guilty to, and that the error was a plain error in that he would not have entered a plea. All right. Thank you, counsel. And just so you know, we do have the motion to strike that was I do have that, um, on the docket. So we will attend to that. Thank you both for your arguments.